BENNETT, Appellee,

v.

MARTIN et al., Appellants.

[Cite as *Bennett v. Martin,* 186 Ohio App.3d 412, 2009-Ohio-6195.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–294.

Decided Nov. 24, 2009.

Law Offices of Russell A. Kelm, Russell A. Kelm and Cynthia L. Dawson, for appellee.

Bricker & Eckler, L.L.P., Quintin F. Lindsmith, Vladimir P. Belo, and James P. Schuck, for appellants.

KLATT, Judge.

{¶ 1} Defendants-appellants, Citynet Ohio, L.L.C., Citynet Holdings, L.L.C., Citynet, L.L.C. ("Citynet"), and James R.J. Martin II[1] (collectively, "defen-

1. Martin is Citynet's chief executive officer ("CEO").

dants"), appeal from a judgment of the Franklin County Court of Common Pleas ordering them to produce forensic copies of computer hard drives to plaintiff-appellee, Duane C. Bennett. For the following reasons, we affirm in part and reverse in part.

{¶ 2} Bennett initiated this lawsuit on September 3, 2004, with a complaint alleging claims for age discrimination in violation of R.C. 4112.02(A), retaliation in violation of R.C. 4112.02(I), fraud, fraudulent inducement, civil conspiracy, promissory estoppel, and breach of contract.[2] In the complaint, Bennett alleged that he had been the general manager for the Columbus office of Adelphia Business Systems ("Adelphia"). After Adelphia went bankrupt and closed its Columbus office, Bennett sought to broker the sale of Aldephia assets out of the bankruptcy court. Bennett located defendants, who hired him to assist in buying certain Adelphia assets and to create a new Citynet operation in Columbus. According to Bennett, once defendants had used him to acquire the assets they needed, they suspended and humiliated him. Upon discovering that he had hired an attorney, defendants forced his actual or constructive termination and replaced him with a substantially younger person.

{¶ 3} Rather than answering Bennett's complaint, defendants moved for dismissal of virtually all of his claims. Bennett, meanwhile, served upon defendants his first set of interrogatories and requests for the production of documents. Defendants' response included the production of approximately 30,000 pages of documents. While the production was voluminous, the pages arrived in seemingly random disorder. For example, the first page of a two-page e-mail string preceded the third and then second pages from a different e-mail string. With approximately 15,800 pages of e-mail strings, Bennett faced the daunting, if not impossible, task of sorting the pages into comprehensible documents.

{¶ 4} Bennett's counsel contacted defendants' counsel, explained the problem, and requested that defendants produce the documents with the pages in sequential order. Defendants' counsel refused. In response, Bennett served on defendants a Civ.R. 30(B)(5) notice of deposition. In this notice, Bennett indicated that his counsel would examine defendants' representative regarding (1) the manner in which defendants retained documents related to Bennett, (2) any directions defendants issued for the retention or destruction of documents related to Bennett, and (3) background information regarding how defendants stored data on their computer system.

---

2. In addition to defendants-appellants, the lawsuit also named four other defendants—James Hyland, Parry A. Petroplus, Milan Puskar, and Steve Lorenze. The trial court ultimately dismissed Petroplus, Puskar, and Lorenze from the case. Hyland, while still a defendant in the underlying case, is not a party to this appeal.

{¶ 5} A day before the deposition was to occur, defendants filed a motion for a protective order and to stay discovery. Pointing out that a ruling in their favor on their motions to dismiss would dispose of multiple claims and parties,[3] defendants sought relief from what they characterized as further "significant, complex discovery." In his memorandum in opposition, Bennett disparaged defendants' "tactical maneuvering" and urged the trial court to allow him to continue the discovery process.

{¶ 6} When three months passed without a ruling on either the motions to dismiss or the motion for a protective order and to stay discovery, Bennett filed a motion to compel discovery. In support of that motion, Bennett asserted that defendants' response to his document requests was wholly inadequate—thousands of pages of e-mail strings were in disarray, defendants' objections were generic and lacked any basis, and no privilege log was provided. Additionally, Bennett claimed that defendants had failed to completely respond to the document requests numbered 3, 6, 8, 13, 14, 19–28, 32, 34, 35, 38, 40, 43–45, 52, 53, 57, 58, 60, and 61. Based upon these deficiencies, Bennett requested that the trial court order defendants to produce all documents that were responsive to the document requests and provide those documents in an organized manner.

{¶ 7} In their memorandum in opposition, defendants represented that they had expended considerable time and effort to locate and produce the e-mail strings, and thus, they resisted Bennett's demand that they incur "additional, extraordinary hours to produce the same information, but in a different form." With regard to their allegedly incomplete response to the document requests, defendants asserted that they did not know what further documents to provide because Bennett had failed to explain how their response was deficient. In closing, defendants vowed to cooperate in discovery, but they hoped that the trial court would first decide their motion to dismiss before imposing an order compelling further discovery.

{¶ 8} On the same day that defendants filed their memorandum opposing Bennett's motion to compel, the trial court issued a decision on defendants' motion for a protective order and to stay discovery. Unwilling to permit potentially unnecessary discovery to proceed, the trial court granted a stay of discovery pending the outcome of the motions to dismiss. As a result of this decision, the lawsuit remained in stasis for approximately one year. Then, on April 6, 2006, the trial court issued a decision on defendants' motion to dismiss. Finding that Bennett could not sustain his claims for fraud, fraudulent induce-

---

3. At this point, two motions to dismiss were pending before the trial court. In the first, Petroplus, Puskar, and Lorenze moved for the dismissal of all the claims against them based upon lack of personal jurisdiction. In the second, defendants moved for the dismissal of the majority of the claims against them based on Civ.R. 8, 9, and 12(B)(6).

ment, civil conspiracy, or promissory estoppel, the trial court dismissed those claims. With this decision, the parties could resume discovery on the surviving claims—age discrimination in violation of R.C. 4112.02(A), retaliation in violation of R.C. 4112.02(I), and breach of contract.

{¶ 9} A month after it recommenced the discovery process, the trial court granted Bennett's motion to compel. The trial court concluded that defendants had failed to comply with Civ.R. 34, and it ordered defendants to "produce the relevant documents in proper sequential order, fully respond to the remaining document requests as they pertain to the remaining causes of action, and provide a privilege log for those documents withheld that they believe are privileged." Relying upon that order, Bennett's counsel twice wrote defendants' counsel seeking supplemental discovery responses. Bennett's counsel also served defendants with a Civ.R. 30(B)(5) notice of deposition identical to the earlier Civ.R. 30(B)(5) notice. The notice, which was served on June 2, 2006, scheduled the deposition for July 18, 2006, in the Columbus office of Bennett's counsel.

{¶ 10} Five days before the scheduled deposition, defendants' counsel sent Bennett's counsel a proposal "to resolve the remaining issues concerning the production of documents." July 13, 2006 letter from Quintin F. Lindsmith to Cynthia L. Dawson. In that proposal, defendants' counsel offered to make Martin available to testify as to the retention, storage, and retrieval of the relevant documents, but on July 25, 26, or 27 in Bridgeport, West Virginia. Defendants' counsel also suggested that the parties use Martin's deposition as an opportunity to "review every single request for production of documents and determine what has been produced satisfactorily, what objections will be maintained, what further production will occur, how such production will be organized, and how such production will occur, *e.g.*, electronically or otherwise." July 13, 2006 letter.

{¶ 11} Bennett's counsel rejected defendants' counsel's proposal. In a July 14, 2006 letter, Bennett's counsel insisted that Martin's deposition occur on July 18, 2006, in Columbus. Additionally, Bennett's counsel stated:

> With respect to defendants' dilatory and deficient responses to discovery, I have been requesting production and available for a telephone conference since plaintiff served the discovery and additionally since the Court's Order [to Compel]. As defendants have failed to produce vast quantities of documents responsive to plaintiff's requests, I would contend that defendants need to review the discovery responses and produce. At this time, defendants have only allegedly produced some of plaintiff's personnel documents and an unidentified handbook. I anticipate that any production of documents would be produced as required under the Ohio Civil Rules in an organized manner responsive to each discovery request. I would also anticipate that each

document would also have a Bates number. With respect to how the documents are produced, plaintiff has requested both hard and electronic.

July 14, 2006 letter from Cynthia L. Dawson to Quintin F. Lindsmith and David W. Babner.

{¶ 12} Soon after this exchange, defendants' counsel sought the intervention of the trial court to resolve the parties' fight over the date and location of Martin's deposition. Upon defendants' motion for a protective order, the trial court ordered that Martin's deposition take place in West Virginia. Apparently, Bennett's counsel deposed Martin in August 2006. Around that same time, defendants produced a second set of documents, which included the reproduction of the e-mail strings, this time in sequential order, and a .pst file of some of Bennett's e-mails.

{¶ 13} Although defendants provided some additional documents in August 2006, Bennett still believed that defendants had not fully responded to his document requests. In later correspondence, both defendants' and Bennett's counsel recollect discussing the outstanding discovery in the autumn of 2006. The record, however, does not contain any details regarding that discussion.

{¶ 14} The issue did not resurface again until defendants' and Bennett's counsel exchanged e-mails in April 2007. After unsuccessfully attempting to schedule a telephone conference with Bennett's counsel, defendants' counsel e-mailed Bennett's counsel a memorandum stating defendants' position on the matter. In the memorandum, defendants' counsel unequivocally asserted that defendants had "adequately and completely answered or responded to plaintiff's requests as they are relevant and applicable" to defendants. April 13, 2007 memorandum from Thomas L. Linkous to Cynthia L. Dawson. Defendants' counsel then addressed each document request for which Bennett's counsel still sought an additional response. For all but one document request, defendants' counsel contended that "[a]ll documents within the categories covered by this request have been produce [sic] either in the first responses or the August 2006 disclosures, and, no other such documents, notes, diaries, calendars, etc. exist." April 13, 2007 memorandum. Bennett's counsel interpreted this memorandum as a refusal to supplement the discovery responses, and she informed defendants' counsel that she would be seeking judicial assistance to resolve the matter.

{¶ 15} Approximately five months after this exchange, Bennett filed a second motion to compel. Asserting that defendants had failed to comply with the May 2006 order to compel, Bennett asked the trial court to again order defendants to completely respond to the document requests numbered 3, 6, 8, 13, 14, 19–28, 32, 34, 35, 38, 40, 43–45, 52, 53, 57, 58, 60, and 61. Defendants did not file any response to Bennett's second motion to compel.

{¶ 16} On October 17, 2007, the trial court issued a decision granting Bennett's second motion to compel. Finding that defendants had disregarded both Bennett's discovery requests and the May 2006 order, the trial court ordered defendants to provide complete and organized responses to document requests 3, 6, 8, 13, 14, 19–28, 32, 34, 35, 38, 40, 43–45, 52, 53, 57, 58, 60, and 61 within 14 days of its October 17, 2007 order. Because some of the document requests sought potentially confidential material, the trial court reminded defendants that they were "free to draft a protective order and submit said order to the court." The trial court also warned defendants that failure to comply with the October 17, 2007 order would result in sanctions.

{¶ 17} Instead of producing further documents, defendants' counsel sent Bennett's counsel a letter in which defendants' counsel claimed to be "at a loss as to what additional materials you need" and reiterated defendants' position that "there simply [were] no further responsive documents that [could] be produced by any of the defendants." November 2, 2007 letter from Thomas L. Linkous to Cynthia L. Dawson. In correspondence dated November 7, 2007, Bennett's counsel set forth each of the disputed document requests, defendants' response, and Bennett's explanation as to how defendants' response was deficient. Bennett's counsel then demanded that defendants deliver their supplemental responses to her by November 9, 2007. Defendants failed to comply.

{¶ 18} On November 13, 2007, Bennett moved for a default judgment as a Civ.R. 37(B) sanction for defendants' violation of the May 2006 and October 2007 orders. In their memorandum in opposition, defendants protested that they had searched their files and produced all documents responsive to Bennett's document requests. To the extent that they might have withheld any documents, defendants blamed their failure to produce on Bennett's refusal to explain what documents were missing from defendants' response.

{¶ 19} The trial court referred the matter to a magistrate for a hearing on Bennett's Civ.R. 37(B) motion. The trial court ordered defendants to submit affidavit testimony prior to the hearing setting forth the information available, gathered, preserved, and produced, as well as the person who was responsible for the information. The trial court also ordered defendants to make the affiants available for the hearing.

{¶ 20} Defendants filed only one affidavit, that of Jeffrey A. Ray, general counsel for Citynet. Ray also testified at the hearing before the magistrate, explaining and elaborating on the information contained in the affidavit. Ray's testimony directly contradicted defendants' earlier assertions that they had produced all responsive documents. With regard to five different document requests, Ray admitted that defendants had in their possession responsive documents that they had withheld because defendants considered those docu-

ments confidential. Ray offered to produce the confidential documents after the parties entered into or the trial court issued a protective order. Prior to Ray's testimony, defendants had neither sought nor received a protective order to safeguard defendants' confidential documents.

{¶ 21} Ray's hearing testimony also contradicted his affidavit testimony. With regard to two document requests, Ray initially represented that no responsive documents existed. On the stand, however, Ray acknowledged that not only did the documents exist but that defendants had omitted those documents from their production.

{¶ 22} With regard to a number of document requests, Ray complained that they were so broad that defendants could not discern the boundaries of the request. Ray stated that if Bennett had narrowed his document requests and specified exactly what documents he wanted, defendants would have produced those documents.

{¶ 23} In his September 18, 2008 decision, the magistrate found Ray's explanation for withholding confidential documents troubling, given that defendants never requested a protective order. The magistrate concluded that defendants' suggestion that they would "consider supplying certain withheld documents, but they first need a protective order, constitutes an admission that Defendant's [sic] failure to abide by the orders of the Court [was] willful."

{¶ 24} The magistrate also viewed defendants' complaints regarding the breadth of the document requests disfavorably. The magistrate stated:

[E]ven if Defendants had genuine concerns over the boundaries of what was being ordered to be produced by the Court, they were left with several choices. First, they could err on the side of caution and be over-inclusive in responding to this request. Although this option is by far the most prudent, there is no dispute that it did not occur. In the alternative, Defendants could petition the Court via a motion for reconsideration, or a motion for clarification or a motion for a protective order. Once again, the record is devoid of these attempts. Finally, Defendants could choose to ignore the orders of the Court, because they perceived the scope of Plaintiff's requests as overbroad and felt that the Court failed to dutifully expound on what it was ordering that Defendants deliver. Unfortunately, litigation is not an entirely passive exercise and Defendants choice of the latter is not without consequence.

Therefore, with only two exceptions, the magistrate rejected defendants' assertion that the document requests and the court orders were too wide in scope.

{¶ 25} Finally, the magistrate found that defendants habitually limited their responses to those documents that involved Bennett or related to Bennett's claim for age discrimination, even if the actual document requests sought a much

broader universe of documents. Based upon defendants' pattern of interpreting the document requests too narrowly, the magistrate concluded that defendants had wrongfully withheld documents responsive to the document requests and court orders.

{¶ 26} Despite significant evidence that defendants had violated the trial court's orders to compel, the magistrate recommended against sanctioning defendants with a default judgment. Rather, the magistrate advised the trial court to order defendants to pay all the reasonable expenses associated with Bennett's efforts to compel the production of the documents. The magistrate also proposed that the trial court order defendants to fully respond to the identified document requests within 20 days after the trial court adopted the magistrate's decision. Additionally, and most importantly, the magistrate recommended that the trial court order defendants to provide, at their own cost, (1) a forensic copy of the computer hard drives of Martin, Citynet's chief financial officer ("CFO"), and Citynet's chief operating officer ("COO") and (2) any schedule, calendar, .pst file, Outlook application, or PDP application used by Martin.

{¶ 27} Defendants objected to the magistrate's recommendation that the defendants produce forensic copies of the hard drives of the specified computers and copies of Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application. While defendants' objections remained pending, the parties filed an agreed protective order governing the designation and disclosure of confidential documents.

{¶ 28} On March 4, 2009, the trial court issued its ruling on defendants' objections. The trial court concluded that given defendants' consistent intransigence to providing discovery materials, forensic imaging of the hard drives was a "reasonable solution" that would ensure that defendants actually produced all responsive documents. Similarly, the trial court found that production of Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application was reasonable. In so finding, the trial court again relied upon defendants' history of discovery noncompliance, as well as defendants' failure to contravene Bennett's contentions that the schedule, calendar, .pst file, Outlook application, and/or PDP application were relevant and not yet produced.

{¶ 29} In sum, the trial court approved and adopted the magistrate's decision with a few relevant caveats. First, the trial court allowed defendants to redact from the forensic copies of the hard drives any privileged material. Second, the trial court permitted defendants to designate personal information contained on the forensic copies for "attorneys' eyes only." Finally, the trial court required Bennett to execute an affidavit confirming that to the best of his knowledge, he is engaged in no professional activity that is in any way competitive to the business activity of the Citynet entities, that he does not encounter any of the Citynet

entities competitively in the course of his professional life, and that he otherwise does not engage in competition with any of the Citynet entities. Apparently, the trial court ordered the affidavit to ensure that Bennett would not use the confidential business information contained in the forensic copies to achieve a competitive advantage over defendants.

{¶ 30} Defendants now appeal from the March 4, 2009 order and assign the following errors:

█ The trial court abused its discretion in ordering Appellants to produce to Appellee and his counsel exact "forensic" copies of the hard drives of the computers used by Citynet's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Chief Operating Officer ("COO"), with only attorney client communications redacted therefrom.

█ The trial court abused its discretion in ordering Appellants to produce to Appellee and his counsel exact "forensic" copies of Appellant Martin's schedule, calendar, PST file, Outlook application, and PDP application.

█ {¶ 31} Before considering the merits of this appeal, we must address Bennett's motion to dismiss for lack of a final, appealable order. R.C. 2505.03(A) limits the jurisdiction of appellate courts to the review of final, appealable orders, judgments, or decrees. *State ex rel. Bd. of State Teachers Retirement Sys. of Ohio v. Davis*, 113 Ohio St.3d 410, 2007-Ohio-2205, 865 N.E.2d 1289, ¶ 44. Pursuant to R.C. 2505.02(B)(4), an order is a final, appealable order if it is

[a]n order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Thus, under R.C. 2505.02(B)(4), an order is a final, appealable order if it satisfies each part of a three-part test: (1) the order must either grant or deny relief sought in a certain type of proceeding, which the General Assembly calls a "provisional remedy," (2) the order must both determine the action with respect to the provisional remedy and prevent a judgment in favor of the appealing party with respect to the provisional remedy, and (3) the reviewing court must decide that the party appealing the order would not be afforded a meaningful or effective remedy by an appeal following final judgment. *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 16; *State v. Muncie* (2001), 91 Ohio St.3d 440, 446, 746 N.E.2d 1092.

{¶ 32} To assist appellate courts with the application of the R.C. 2505.02(B)(4) test, the General Assembly defined the term "provisional remedy" as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, [or] suppression of evidence." R.C. 2505.02(A)(3). The examples set forth in this definition merely serve an illustrative purpose, so exclusion from the list does not preclude an appellate court from recognizing an unlisted ancillary proceeding as a provisional remedy. *Muncie* at 448, 746 N.E.2d 1092.

{¶ 33} Very few discovery proceedings qualify as provisional remedies. *Myers v. Toledo,* 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 24. R.C. 2505.02(A)(3) itself names only one—a proceeding that results in the discovery of privileged matter. Noting the similarity between the discovery of privileged matter and the discovery of confidential matter, appellate courts have held that proceedings resulting in the discovery of confidential matter are also provisional remedies. *Armstrong v. Marusic,* 11th Dist. No. 2001–L–232, 2004-Ohio-2594, 2004 WL 1144377, ¶ 12; *Gibson–Myers & Assoc. v. Pearce* (Oct. 27, 1999), 9th Dist. No. 19358, 1999 WL 980562. These courts have recognized that an order requiring the disclosure of privileged matter presents the same harm as an order requiring the disclosure of confidential matter. In both cases, injury results from the dissemination of the information itself, which cannot be remedied absent an immediate appeal.

■ {¶ 34} In the case at bar, defendants argue that the discovery proceedings constitute a provisional remedy because they culminated in an order granting discovery of all confidential personal and business information contained on the hard drives of Citynet's CEO, CFO, and COO. Bennett does not dispute that the trial court's order allows the discovery of sensitive information. However, he contends that defendants cannot now claim that any of that information is confidential, as they failed to raise any objection based on confidentiality in response to Bennett's two motions to compel.

■ {¶ 35} We find Bennett's argument unavailing. An appellate court's jurisdiction cannot depend upon whether or not a party has waived the right to assert an error on appeal. Otherwise, an appellate court would be forced to decide the merits of the appeal in order to determine whether it has the power to hear and decide the merits of the appeal. To avoid this conundrum, appellate courts have reasoned that as long as an appellant presents a "colorable claim" that the documents subject to a discovery order are privileged and/or confidential, the proceeding that resulted in that order qualifies as a provisional remedy. *Callahan v. Akron Gen. Med. Ctr.,* 9th Dist. No. 22387, 2005-Ohio-5103, 2005 WL 2373916, ¶ 29; *Schottenstein, Zox & Dunn v. McKibben,* 10th Dist. No. 01AP–1384, 2002-Ohio-5075, 2002 WL 31122804, ¶ 19; *Cuervo v. Snell* (Sept. 26, 2000),

10th Dist. No. 99AP–1442, 2000 WL 1376510. See also *Armstrong* at ¶ 13 (information ordered disclosed "potentially" included trade secrets); *Johnson v. Univ. Hosps. of Cleveland* (Mar. 28, 2002), 8th Dist. No. 80117, 2002 WL 472298 (appellant only argued that documents were confidential and privileged); *Gibson–Myers* (appellant merely averred that documents in question were confidential). Here, where the trial court has ordered defendants to turn over the contents of the hard drives of Citynet's CEO, CFO, and COO, the order unquestionably requires the disclosure of confidential matter. Moreover, even if we were to credit Bennett's waiver argument, we find that defendants did not waive their objection to the discovery of nondocumentary confidential matter, such as recoverable deleted files, available to Bennett only through the forensic imaging of the hard drives. Therefore, we conclude that the trial court's order satisfies the first part of the R.C. 2505.02(B)(4) test.

{¶ 36} If a particular order arises from a provisional remedy, an appellate court must next consider whether that order in effect determines the action with respect to the provisional remedy and prevents a judgment in favor of the appealing party with respect to the provisional remedy. *Muncie*, 91 Ohio St.3d at 450, 746 N.E.2d 1092. Here, the trial court's order determined the action as to the provisional remedy in that it settled the discovery dispute between the parties. Additionally, the order prevents a judgment in favor of defendants because it requires the dissemination of confidential matter that defendants seek to keep secret. Therefore, the trial court's order satisfies the second part of the R.C. 2505.04(B)(4) test.

{¶ 37} Finally, an appellate court must consider whether the party seeking to appeal would have any adequate remedy on appeal from a final judgment. *Muncie* at 451, 746 N.E.2d 1092. As this court and others have recognized, in situations where a trial court orders the discovery of confidential information,

"the party resisting discovery will have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage. In a competitive commercial market where customers are a business'[s] most valuable asset and technology changes daily, disclosure of a trade secret will surely cause irreparable harm."

*Dispatch Printing Co. v. Recovery Ltd. Partnership*, 166 Ohio App.3d 118, 2006-Ohio-1347, 849 N.E.2d 297, ¶ 8, quoting *Gibson–Myers*. Because information is no longer confidential after dissemination, defendants would not have an effective remedy if forced to delay appeal until after final judgment. Therefore, we conclude that defendants have satisfied the third part of the R.C. 2505.02(B)(4) test.

{¶ 38} Having met all the requirements of R.C. 2505.02(B)(4), the trial court's order constitutes a final, appealable order. Thus, we overrule Bennett's motion

to dismiss. Consequently, we turn to the first assignment of error, by which defendants argue that the trial court erred in ordering them to produce forensic copies of the hard drives of the computers used by Citynet's CEO, CFO, and COO.

{¶ 39} A trial court has broad discretion when ruling upon a motion for sanctions under Civ.R. 37(B). *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. Absent an abuse of that discretion, an appellate court will not reverse the imposition of a discovery sanction. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

 {¶ 40} A forensic image, or "mirror image," of a hard drive " 'replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive.' " *Balboa Threadworks, Inc. v. Stucky* (Mar. 24, 2006), D.Kan. No. 05–1157–JTM–DWB, 2006 WL 763668, at *3, quoting *Communications Ctr., Inc. v. Hewitt* (Apr. 5, 2005), E.D.Cal. No. Civ.S–03–1968 WBS KJ, 2005 WL 3277983, at *1. See also *Ferron v. Search Cactus, L.L.C.* (Apr. 28, 2008), S.D.Ohio No. 2:06–CV–327, 2008 WL 1902499, *3, fn. 5 ("A mirror image copy represents a snapshot of the computer's records. * * * It contains all the information in the computer, including embedded, residual, and deleted data"). Generally, courts are reluctant to compel forensic imaging, largely due to the risk that the imaging will improperly expose privileged and confidential material contained on the hard drive. Because allowing direct access to a responding party's electronic information system raises issues of privacy and confidentiality, courts must guard against undue intrusiveness. *Scotts Co. L.L.C. v. Liberty Mut. Ins. Co.* (June 12, 2007), S.D.Ohio No. 2:06–CV–899, 2007 WL 1723509, at *3. See also *Capitol Records, Inc. v. Alaujan* (May 6, 2009), D.Mass. No. 03CV11661–NG, 2009 WL 1292977, at *2 (holding that "the principal issue" in forensic-imaging cases centers "on concerns for defendants' privacy").

 {¶ 41} Thus, before compelling forensic imaging, a court must weigh "the significant privacy and confidentiality concerns" inherent in imaging against the utility or necessity of the imaging. *John B. v. Goetz* (C.A.6, 2008), 531 F.3d 448, 460; *Covad Communications Co. v. Revonet, Inc.* (D.D.C.2009), 258 F.R.D. 5, 11. In determining whether the particular circumstances justify forensic imaging, a court must consider whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests. *Henderson v. U.S. Bank, N.A.* (Apr.

29, 2009), E.D.Wis. No. 08C0839, 2009 WL 1152019, at *2; *Bianco v. GMAC Mtge. Corp.* (Oct. 22, 2008), E.D.Pa. No. 07–4650, 2008 WL 4661241, at *2; *Williams v. Mass. Mut. Life Ins. Co.* (D.Mass.2005), 226 F.R.D. 144, 146. When a requesting party demonstrates either discrepancies in a response to a discovery request or the responding party's failure to produce requested information, the scales tip in favor of compelling forensic imaging. *White v. Graceland College Ctr. for Professional Dev. & Lifelong Learning, Inc.* (Mar. 18, 2009), D.Kan. No. 07–2319–CM, 2009 WL 722056, at *7; *Diepenhorst v. Battle Creek* (June 30, 2006), W.D.Mich. No. 1:05–CV–734, 2006 WL 1851243, at *3; *In re Weekley Homes, L.P.* (2009), 52 Tex. Sup.Ct. J. 1231, 295 S.W.3d 309. See also *In re Ford Motor Co.* (C.A.11, 2003), 345 F.3d 1315, 1317 (denying the requesting party direct access to the responding party's computer systems without a factual finding of some noncompliance with discovery rules).

{¶ 42} Bennett has demonstrated that defendants repeatedly represented that they had disclosed all responsive documents when, in fact, they had not. As the magistrate found, such obfuscation displays a willful disregard of the discovery rules and the trial court's orders. Moreover, defendants' last-minute discovery of certain responsive documents indicates that when not outright defying the trial court's orders, defendants adopted a lackadaisical and dilatory approach to providing discovery. Given this background of noncompliance, we cannot conclude that the trial court abused its discretion in ordering defendants to produce forensic copies of the hard drives of Citynet's CEO, CFO, and COO.

{¶ 43} In arguing to the contrary, defendants first contend that the trial court's order impermissibly allows Bennett to discover vast amounts of irrelevant information that cannot possibly relate to Bennett's age-discrimination, retaliation, and breach-of-contract claims. While defendants may be correct, they fail to appreciate that their own intransigence in the course of discovery justifies the scope of the trial court's order.

{¶ 44} Defendants first had the opportunity to protest the scope of the required production when responding to document request number 24, the apparent predicate for the trial court's order for forensic imaging. That document request asked defendants to

> produce all documents maintained by individual defendants, the Chief Operating Officer, and/or the Chief Financial Officer on their hard drives or located elsewhere, which include but are not limited to, documents related to plaintiff, plaintiff's employment, plaintiff's job responsibilities, defendants' reorganization, and/or defendants' finance.

Defendants objected that this request was overly broad and sought irrelevant information. Defendants, however, never raised their objection before the trial

court in response to either of Bennett's motions to compel. Because they were resisting discovery, defendants bore the burden of demonstrating to the trial court that the requested information would not reasonably lead to the discovery of admissible evidence. *Patterson v. Zdanski,* 7th Dist. No. 03 BE 1, 2003-Ohio-5464, 2003 WL 22339492, ¶ 19; *State ex rel. Fisher v. Rose Chevrolet, Inc.* (1992), 82 Ohio App.3d 520, 523, 612 N.E.2d 782. When defendants abdicated this responsibility, the trial court ordered compliance with the document request.

{¶ 45} On Bennett's Civ.R. 37(B) motion for sanctions, the question before the trial court was no longer the propriety of the document requests, but instead whether defendants had violated two court orders. Once the trial court ascertained that defendants had, in fact, contravened its orders, it could impose any just order to sanction defendants' conduct. Civ.R. 37(B); *Billman v. Hirth* (1996), 115 Ohio App.3d 615, 620, 685 N.E.2d 1287, quoting *Laubscher v. Branthoover* (1991), 68 Ohio App.3d 375, 381, 588 N.E.2d 290. (" 'Civ.R. 37 authorizes the court to make "just" orders in response to violations of the discovery rules or court orders' "). Here, defendants proved themselves untrustworthy to produce documents in compliance with the court orders. To ensure obedience with its orders, the trial court ordered forensic imaging, which prevents defendants from withholding any information. With access to forensic copies of the relevant hard drives, Bennett can devise searches to verify that he has obtained all responsive documents. Given defendants' blatant disregard for the trial court's orders, we conclude that the trial court did not abuse its discretion in forging this particular sanction.

{¶ 46} Next, defendants point out that the forensic imaging will reveal confidential personal and business information that would be highly damaging to the users of the computers and Citynet's competitiveness. Defendants assert that this information includes the amounts contained in each employee's incentive accounts, details regarding negotiations for business opportunities that are not publicly known, personnel evaluations of employees, financial information of investors, future business plans and budgets, pricing information for Citynet's products, customer information (such as customer passwords and telephone records), personal and family information of the users of the computers; individual employee payroll and benefits information, bank records and investment activity, and network passwords, designs, maps, and security information. Defendants are particularly loath to disclose this information to Bennett because he currently works for one of Citynet's direct competitors.

{¶ 47} Even when a defendant's misconduct in discovery makes forensic imaging appropriate, a court must protect the defendant's confidential information, as well as preserve any private and privileged information. *U & I Corp. v. Advanced Med. Design, Inc.* (M.D.Fla.2008), 251 F.R.D. 667, 674;

*Calyon v. Mizuho Secs. USA Inc.* (May 18, 2007), S.D.N.Y. No. 07CIV02241RODF, 2007 WL 1468889, at *3; *Frees, Inc. v. McMillian* (Jan. 22, 2007), W.D.La. No. 05–1979, 2007 WL 184889, at *3, affirmed, 2007 WL 1308388. The failure to produce discovery as requested or ordered will rarely warrant unfettered access to a party's computer system. *Bank of Mongolia v. M & P Global Fin. Servs., Inc.* (S.D.Fla.2009), 258 F.R.D. 514, 521. Instead, courts adopt a protocol whereby an independent computer expert, subject to a confidentiality order, creates a forensic image of the computer system. The expert then retrieves any responsive files (including deleted files) from the forensic image, normally using search terms submitted by the plaintiff. The defendant's counsel reviews the responsive files for privilege, creates a privilege log, and turns over the nonprivileged files and privilege log to the plaintiff. See, e.g., id. at 520–521; *Am. Family Mut. Ins. Co. v. Gustafson* (Mar. 10, 2009), D.Colo. No. 08–cv–02772–MSK–MJW, 2009 WL 641297, at *3–4; *Frees*, 2007 WL 184889, at *3–4; *Ameriwood Industries, Inc. v. Liberman* (Dec. 27, 2006), E.D.Mo. No. 4:06CV524–DJS, 2006 WL 3825291, at *5–6, amended on clarification (Feb. 23, 2007), 2007 WL 685623, at *1–2. See also *Koosharem Corp. v. Spec Personnel, L.L.C.* (Sept. 29, 2008), D.S.C. No. 6:08–583–HFF–WMC, 2008 WL 4458864, at *2–4 (allowing defendants also to withhold personal e-mail); *Cenveo Corp. v. Slater* (Jan. 31, 2007), E.D.Pa. No. 06–CV–2632, 2007 WL 442387, at *2–3 (ordering the expert to retrieve all files from the forensic image, not just those responsive to search terms).

{¶ 48} In the case at bar, the trial court included some safeguards for defendants' privileged and confidential personal matter. The trial court permitted defendants to redact privileged information from the forensic copies and provided that defendants could designate certain confidential personal information for "attorneys' eyes only." Nevertheless, we believe that more-comprehensive protection is necessary, particularly given the sensitivity of the information at issue here. Bennett deserves a remedy for the prejudice caused by defendants' misconduct, but that remedy should not require defendants to sacrifice highly sensitive, confidential information that has no bearing on Bennett's claims. Additionally, private information of the computers' users—such as personal financial information and communications with friends and family—should not be subject to disclosure. Therefore, we conclude that the trial court abused its discretion in devising the procedure for the forensic imaging. We urge the trial court to adopt a protocol similar to the one described above. We believe that such a protocol would allow Bennett sufficient access to the computer systems to recover useful information, while also providing defendants with an opportunity to identify and protect privileged and confidential matter.

{¶ 49} In sum, we conclude that the trial court did not abuse its discretion in ordering forensic imaging as a Civ.R. 37(B) sanction for defendants' noncompliance with the trial court's orders. Nevertheless, we conclude that the trial court erred in not providing adequate protections to safeguard the confidentiality of the information contained on the computer systems to be imaged. Accordingly, we sustain defendants' first assignment of error, but only to the extent that it challenges the procedure by which the trial court ordered the forensic imaging to occur.

{¶ 50} By defendants' second assignment of error, they argue that the trial court erred in ordering them to produce forensic images of Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application. Defendants, however, misread the magistrate's decision and the trial court's order. Neither requires forensic imaging of Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application. Absent the issues raised by forensic imaging, defendants' only argument is that the trial court's order is unclear. If defendants are uncertain regarding the meaning of the trial court's order, we direct them to seek clarification from the trial court. Defendants have not identified any basis for this court to find that the trial court abused its discretion in ordering defendants to produce Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application. Accordingly, we overrule defendants' second assignment of error.

{¶ 51} For the foregoing reasons, we deny Bennett's motion to dismiss for lack of a final, appealable order. We overrule in part and sustain in part defendants' first assignment of error, and we overrule defendants' second assignment of error. Consequently, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings consistent with law and this decision.

Motion to dismiss denied;
judgment affirmed in part
and reversed in part,
and cause remanded.

FRENCH, P.J., and SADLER, J., concur.