[Cite as *Byrd v. U.S. Xpress, Inc.*, 2014-Ohio-5733.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DARRELL BYRD, Individually and as Personal Representative of the Estate of Zachary A. Byrd, | : | APPEAL NO. C-140260<br>TRIAL NO. A-1308010 |
| | : | |
| EMILY HARRISON, Individually and as Guardian of JAMES HARRISON, IV, | : | *O P I N I O N.* |
| | : | |
| and | : | |
| | : | |
| JAMES HARRISON, IV, Individually and through Guardian EMILY HARRISON, | : | |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | |
| vs. | : | |
| | : | |
| U.S. XPRESS, INC., | : | |
| | : | |
| Defendant-Appellant, | : | |
| | : | |
| and | : | |
| | : | |
| JASON WOODYARD, | : | |
| | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Vacated and Cause Remanded

Date of Judgment Entry on Appeal: December 26, 2014

*The Sanders Law Firm, PSC*, *Robert E. Sanders*, *Justin A. Sanders* and *Delana S. Sanders*, for Plaintiffs-Appellees,

*Dickie, McCamey & Chilcote, P.C.*, *Joseph J. Golian* and *Mary McWilliams Dengler*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.



**DEWINE, Judge.**

{¶1}     This is an interlocutory appeal from the entry of a protective order.  At issue are the "sharing provisions" of the order; that is, provisions of the order which allow counsel to share confidential and trade-secret materials produced in discovery with attorneys and experts involved in other lawsuits and potential lawsuits.

{¶2}     The propriety of such sharing protective orders has been an issue frequently considered by courts across the country in recent years.   In some circumstances, sharing provisions have been upheld by courts; in other circumstances, they have not.  Here, we find that the trial court's decision to enter the sharing protective order to be an abuse of its discretion.  We reach this conclusion because we find the particular sharing provisions at issue here to be extraordinarily broad and to lack the protections employed in other cases.   Specifically, we find the order objectionable because it allows the sharing of trade secrets and other confidential information, but requires no showing that the other litigation is in any way related, similar or connected to the present litigation, because it allows counsel virtually unfettered discretion to determine with whom confidential information is shared without court oversight, and because it lacks other protections designed to protect the misuse of the disclosed materials.

## I.  Background

{¶3}     The underlying lawsuit is an action for negligence and wrongful death filed against a trucking company and its driver. On September 13, 2013, Jason Woodyard crashed a semi owned by U.S. Xpress, Inc., ("USX") into the rear of a car that was stopped on I-75.  One occupant of the car, Zachary Byrd, was killed in the crash; the other occupant, James Harrison, was severely injured.  Zachary's father,

Darrell Byrd, sued on behalf of Zachary's estate. Mr. Harrison sued on his own behalf, and his wife, Emily, sued on her own behalf and as James's guardian.

{¶4} In February 2014, the plaintiffs served USX with numerous discovery requests including 40 interrogatories, 115 document requests, and 36 requests for admissions. Prior to responding, USX sought to negotiate a stipulated protective order with the plaintiffs whereby the plaintiffs would agree to not disclose documents that USX claimed constituted trade secrets or confidential information. After it was unable to reach an agreement with the plaintiffs, USX filed a motion asking the court to enter a protective order. In an affidavit attached to the motion, the litigation director of USX's risk management department stated that 16 of the plaintiffs' document requests "encompass proprietary and commercial information, including documents with financial, marketing, research, and customer information relating to [USX's] business from which [USX] derives an economic value." USX also attached a proposed protective order that would prohibit dissemination of its confidential documents outside of the litigation.

{¶5} The plaintiffs opposed USX's motion and proposed order. They argued that USX had not established good cause for a protective order because it failed to show that any of its documents were in fact confidential. Alternatively, the plaintiffs submitted a proposed sharing protective order that would permit them to share USX's confidential information with other attorneys preparing or prosecuting personal injury claims against USX.

{¶6} The court heard argument on the parties' motions. A few days after the hearing, the court signed and entered the sharing protective order proposed by the plaintiffs.

{¶7} Under the sharing protective order, USX may designate as "Confidential" documents containing "trade secret or other confidential research, development, or commercial information." If the plaintiffs contest the designation of any documents as confidential, USX bears the burden to file a written motion and to convince the court that the confidential designation is appropriate. The plaintiffs' attorneys may disseminate confidential materials to: (1) the plaintiffs; (2) the attorneys' support staff; (3) experts retained by the plaintiffs' attorneys "to assist in the investigation, preparation, prosecution, or evaluation of this litigation and/or any other litigation in which claims of personal injury are alleged against" USX; (4) potential deponents and witnesses "in this litigation and/or any other litigation in which claims of personal injury are alleged against" USX; (5) court officials; (6) persons authorized by the court to receive confidential documents; and (7) "*[o]ther plaintiff's attorneys and experts * * * involved in the investigation, preparation, prosecution, or evaluation of any personal injury claims against"* USX. (Emphasis added.)

{¶8} Recipients of confidential documents must sign nondisclosure agreements binding them to the terms of the order. The nondisclosure agreements prohibit recipients from disclosing USX's confidential information to the public, media, or USX's competitors. The plaintiffs' attorneys must maintain a list of all recipients of confidential documents. But no one, including USX, may examine the list without permission from the plaintiffs or a "written order of the Court issued after a hearing and for good cause."

{¶9} At the end of the case, the plaintiffs' attorneys and other confidential-document recipients may keep USX's confidential materials. And the plaintiffs' attorneys may use the confidential documents "in the investigation, preparation,

prosecution or evaluation of any other claim(s) alleging personal injury against" USX.

## II.  Do we have jurisdiction?

{¶10}  We must first determine whether we have jurisdiction over this appeal.  An appellate court's jurisdiction is limited to the review of final judgments of lower courts.  Ohio Constitution, Article IV, Section 3(B)(2).  To invoke our jurisdiction, a court's order must meet the finality requirements of R.C. 2505.02.  Under R.C. 2505.02(B)(4), a final order is one that

> grants or denies a provisional remedy and to which both of the following apply: (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy[; and] (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶11}  The statue defines "provisional remedy" to include a proceeding for "discovery of privileged matter."  R.C. 2505.02(A)(3).  Noting the similarity of trade-secret information to privileged information courts have held that proceedings that result in the discovery of trade-secret information also constitute provisional remedies.  *See Armstrong v. Marusic*, 11th Dist. Lake No. 2001-L-232, 2004-Ohio-2594, ¶ 12.

{¶12}  The plaintiffs argue that the court's order does not deny a provisional remedy because USX has not established that any of the requested documents contain confidential trade secrets.  Courts, however, have not required parties to conclusively prove the existence of a trade secret or privileged matter as a

precondition to appellate review under 2505.02(B)(4). To impose such a requirement would force an appellate court "to decide the merits of an appeal in order to decide whether it has the power to hear and decide the merits of an appeal." *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 35 (10th Dist.). Rather, "to avoid this conundrum," a party need only make a "colorable claim" that documents subject to discovery are privileged or confidential for an order to qualify as a provisional remedy. *Id.* The documents at issue here include training materials, financial information, and customer shipping records. We doubt whether all of the information for which USX seeks protection will ultimately qualify as a trade secret or confidential information entitled to protection. But we think there is at least a colorable claim that some of the information constitutes a trade secret so as to qualify the order as a provisional remedy. *See Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 22387, 2005-Ohio-5103, ¶ 29.

{¶13} We also must consider whether the court's order "determines the action" with respect to the provisional remedy. In response to the plaintiffs' discovery requests, USX moved for a protective order to limit the disclosure of what it claimed was confidential or trade-secret information. The plaintiffs opposed USX's protective order and argued that no protective order was necessary, or in the alternative, that the court should enter the sharing protective order that they proposed. The court entered the plaintiffs' proposed order. The effect of that decision is that the claimed confidential/trade-secret information will be produced, and plaintiffs may share the information with attorneys in other lawsuits.

{¶14} We believe that the court's order which granted plaintiffs' proposed protective order and effectively denied USX's proposed order determines the action with respect to the provisional remedy. *See N.E. Professional Home Care v.*

7

*Advantage Home Health Servs., Inc.*, 188 Ohio App.3d 704, 2010-Ohio-1640, 936 N.E.2d 964, ¶ 41 (5th Dist.); *Ramun v. Ramun*, 7th Dist. Mahoning No. 08 MA 185, 2009-Ohio-6405, ¶ 26-27. *But see Peppeard v. Summit Cty.*, 9th Dist. Summit No. 25057, 2010-Ohio-2862, ¶ 12. As explained by the dissent in the *Peppeard* case, to hold otherwise would put the party seeking to avoid discovery in an untenable position. *Id.* at ¶ 21. To obtain a final order, the party would have to ignore the trial court's decision and continue to refuse discovery until the other side filed a motion to compel. *Id.* The "frustrated" trial court, having already decided the substantive issue, would undoubtedly grant the motion and only then could the party appeal. *Id.* Such an unnecessary and redundant requirement, however, could possibly subject the objecting party to sanctions under Civ.R. 37 for refusing to provide discovery after the trial court's denial of the motion to compel. *Id.* We find it unnecessary to impose such a burden. Because the effect of the order is that confidential documents will be produced and shared, the order has determined the action with respect to the provisional remedy

{¶15} Finally, we must consider whether USX would be able to obtain meaningful relief following the entry of final judgment. The harm USX seeks to avoid is the sharing of confidential/trade-secret information with attorneys involved in other lawsuits. Because it is the sharing of the information which USX seeks to prevent, there is no effective relief that may be provided after final judgment. *Armstrong*, 11th Dist. Lake No. 2001-2-232, 2004-Ohio-2594, at ¶ 12.

{¶16} Jurisdiction is proper in this court because USX has shown that the protective order will result in the disclosure of information that colorably constitutes trade secrets, because the protective order determines the action with respect to the

sharing of trade secrets, and because meaningful relief will not be available on appeal from final judgment.

## II. On to the merits

{¶17} We now turn to the merits of the appeal. In a single assignment of error, USX contends that the trial court abused its discretion by adopting the sharing provisions of the protective order. USX argues that the provisions are unreasonable in scope and fail to adequately safeguard its trade secrets. We agree.

## A. Hardly a novel issue

{¶18} The issue presented in this case is not new. The question of when information produced in one lawsuit may be shared with participants in another lawsuit is one that has been dealt with in legions of cases across the country. *See, e.g., Gil v. Ford Motor Co.*, N.D.W.Va. No. 1:06CV122, 2007 U.S. Dist. LEXIS 65269 (Sept. 4, 2007); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir.2003); *Stokes v. Life Ins. Co. of N. Am.*, D.Idaho No. CIV 06-00411-S-LMB, 2009 U.S. Dist. LEXIS 131394 (Aug. 31, 2009).

{¶19} The decision as to whether "sharing" should be allowed is a discovery matter that is vested to the sound discretion of the trial court. *See Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). As a result, the legal databases are replete with cases where sharing has been allowed, and also with cases where it has not been allowed. *See, e.g.*, *Miller v. Gen. Motors Corp.*, 192 F.R.D. 230 (E.D.Tenn.2000) (plaintiffs' motion for a sharing protective order granted); *Darby v. Safeco Ins. Co. of Am.*, D.Ariz. No. CV-12-00287-PHX-PGR, 2012 U.S. Dist. LEXIS 162610 (Nov. 14, 2012) (plaintiff entitled only to "non-sharing" protective order).

{¶20} Because of the broad discretion granted to trial courts in the regulation of discovery, trial court decisions allowing or not allowing sharing are not

often overturned on appeal in the ordinary course. But we find it necessary that we do so here.

{¶21} We find it necessary because our review of the rationale for sharing protective orders and of other cases considering the issue convinces us that the sharing provisions here are extraordinarily broad and lack the procedural protections employed by other courts. We believe that under the facts of this case, the court did abuse its discretion in entering the particular sharing protective order that it entered.

**B. The interests at stake: protection of confidential information, litigation efficiency and the public interest**

{¶22} We start with the premise that absent a protective order, parties to a lawsuit may generally disseminate discovered materials as they wish. *See, e.g., Jepson Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994). But the situation is more complicated when trade secrets or other confidential information is involved. Ohio has adopted the Uniform Trade Secrets Act, providing legal protections for trade secrets and preventing the disclosure of trade-secret information that was improperly obtained. And the rules of discovery authorize a court to issue a protective order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Civ.R. 26(C)(7).

{¶23} Thus, the rules don't prohibit the disclosure or sharing of even trade-secret information. But they do suggest that consideration should be given as to appropriate means to protect legitimate confidentiality concerns.

{¶24} Sharing requests invoke several important interests. First, of course, is the producing party's desire to keep its confidential information secret. And at

least, when trade secrets and other confidential information are involved, this is an interest which must not be lightly disregarded. Presumably, disclosure to collateral litigants increases the risk of harm from the disclosure of confidential information. The more entities that have access to the information, the greater the risk of harm. And as Professor Arthur Miller has pointed out, on a system-wide level, the care with which courts guard confidential information will impact the willingness of parties to lawsuits to produce information. *See* Miller*, Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 477 (1991).

{¶25} On the other hand, sharing of discovery may reduce litigation costs and, in some cases, promote the public interest. It may make little sense to force litigants in different lawsuits to "reinvent the wheel" with their discovery efforts. *Id.* at 497. Sharing reduces the "wasteful" and "unnecessary" duplication of discovery. *Jepson*, 30 F.3d at 861. Further, sharing may promote public health and safety as, for example, when attorneys share information about a harmful product or commercial practice.

{¶26} Although we have never had occasion before this to weigh in on the propriety of a sharing protective order, the issue of discovery sharing is not new to this court. There are two ways that the sharing issue comes up. The first is in a case such as this one where an attorney seeks to share the fruits of discovery with other attorneys. The other is when a protective order is already in place, and a third-party attorney seeks to intervene and modify the protective order so as to gain access to what has already been produced. Both scenarios present similar considerations. And while this case is our first attempt to deal with the first scenario, we previously dealt with the second scenario in *Adams v. Metallica, Inc.*, 143 Ohio App.3d 482, 492, 758 N.E.2d 286 (1st Dist.2001).

11

{¶27} In *Adams,* we held that when a collateral litigant seeks to modify a protective order, the trial court should employ a balancing test that considers all relevant factors, including: "the nature of the protective order, the parties' reliance on it, the ability to gain access to the information in other ways, the need to avoid repetitive discovery, the nature of the material for which protection is sought, the need for continued secrecy, and the public interest involved." *Id.,* citing *State v. Philip Morris, Inc.,* 606 N.W.2d 676, 688 (Minn.App.2000). We also held that an important consideration in whether a collateral litigant should be allowed to modify a protective order is "the degree of similarity between the two suits used to justify the claim of repetitious or overlapping discovery, as well as the merits of the second suit when weighed against the privacy interests underlying the protective order." *Adams* at 492-93. We believe that many of the factors we found important in *Adams*—the similarity of the lawsuits, privacy interests at stake, and the public interest—apply with equal forcing to sharing protective orders.

{¶28} Bearing in mind the general interests supporting sharing protective orders and our holding in *Adams*, we turn to the sharing protective order entered in this case. In particular, we find it problematic for two reasons. First, it is not limited to sharing in cases where there is an obvious benefit in terms of efficiency or protecting public safety. Second, it lacks procedural protections commonly employed in other cases to limit the risk of improper disclosure.

## C. This protective order is extraordinarily broad in allowing sharing with attorneys in unrelated litigation.

{¶29} The primary rationale set forth in favor of allowing sharing is to increase litigation efficiency by allowing the sharing of information between participants in lawsuits involving the same facts and avoiding costly and time-

consuming discovery. *See* Miller, 105 Harv.L.Rev. at 497-499. Considering this justification, the protective order here is troubling in that it doesn't require that other attorneys accessing information have claims that are in any way related or similar to those at bar. Rather than being limited to similar litigation, the order allows sharing with any attorneys or experts "involved in the investigation, preparation, prosecution, or evaluation of any personal injury claims against" USX. In other words, the litigation need not be legally or factually similar and there need not even be litigation—investigating or preparing for litigation is sufficient.

{¶30} When, as it did in *Adams*, sharing comes up in the context of an attempt to modify a protective order, the court's inquiry is in many ways easier than it is in a case like this one where a party asks for sharing to be preemptively built into a protective order. In the modification context, a court is able to assess whether the efficiency gains are worth the risks of disclosure because it can evaluate the extent to which sharing with a particular litigant will avoid duplicative discovery and also the risks of competitive harm from disclosure. Such an inquiry is much more difficult when the court doesn't know the parties with whom the information will be shared.

{¶31} As a result, many of the courts that have authorized sharing protective orders have required terms that ensure that sharing will be limited to situations where there is a similarity between the lawsuits. *See, e.g., McDaniel v. Freightliner Corp.*, S.D.N.Y. No. 99 Civ. 4292, 2000 U.S. Dist. LEXIS 3497, *31 (Mar. 23, 2000); *see also Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 584 (S.D.Fla.2014). This is part of the reason why so many sharing cases arise in the mass-tort or products-liability context. *See, e.g., Cipollone v. Liggett Group, Inc.*, 822 F.2d 335 (3d Cir.1987) (permitting sharing among litigants in "tobacco" tort cases). And courts frequently reject sharing provisions where the requesting party cannot

specifically identify any collateral proceedings. *See, e.g., Menendez v. Wal-Mart Stores E. LP*, N.D.Ind. No. 1:10-cv-53, 2012 U.S. Dist. LEXIS 4143, *11 (Jan. 11, 2012).

{¶32}   In our case, however, there is nothing in the order that requires any similarity with the other litigants. The only similarity necessary is that USX be the defendant and that the claim alleges personal injury.

{¶33}   Perhaps even more troubling is that the order permits sharing with people who are not even involved in a lawsuit against USX. So long as an attorney is investigating, preparing, or evaluating a personal-injury claim against USX, he or she may access USX's trade secrets. The actual merits of the potential case or relevance of USX's trade secrets is not considered.

{¶34}   Nor is there anything to suggest that particular public-safety concerns make this a case where sharing is especially appropriate. In a large-scale products-liability case, wide dissemination of otherwise protected materials—such as manufacturing processes or product designs—can ultimately lead to increased consumer safety. *See Koval v. Gen. Motors Corp.*, 62 Ohio Misc.2d 694, 699, 610 N.E.2d 1199 (C.P.1990). But while the injuries are horrific in this case, the facts are straightforward. It is a case about an automobile accident.

### D. A lack of judicial oversight and the potential for abuse

{¶35}   A related problem is the lack of oversight over the sharing process. The sharing protective order gives the plaintiffs the sole discretion to determine with whom they share information. It requires only that the plaintiffs maintain the list of individuals with whom they have shared information, and for USX to even find out who has its confidential information, it must obtain a court order.

{¶36} But by leaving it up to the plaintiffs to decide with whom to share confidential information and not giving defendants a prior opportunity to object, the traditional protections for producing parties in the discovery process are eviscerated. Discovery is undoubtedly an intrusive process, and those subject to discovery are often forced to turn over a wide variety of information that they would prefer to keep private.

{¶37} In the ordinary course, however, there are protections in the discovery process that are not present here. First, before discovery is initiated, there generally needs to be a lawsuit. A defendant who believes that a claim has been frivolously brought may ask the court to hold off on discovery until it has ruled on a motion to dismiss. Discovery may be resisted, because it is so far afield that it is not likely to lead to the discovery of relevant information. Moreover, a defendant who believes that his or her information is sought for an improper purpose may resist discovery or seek particularized protections before disclosing information. *See Bertetto v. Eon Labs, Inc.*, D.N.M. No. 06-1136, 2008 U.S. Dist. LEXIS 119233, *8 (May 29, 2008).

{¶38} Here, however, USX has no way of knowing who is getting such information. As a result, it has no advance opportunity to resist disclosure of information to other litigants or even potential litigants. Suppose a USX truck was involved in an accident with a truck owned by one of its competitors, injuring the driver of the competitor's truck. Under the terms of the order, the plaintiffs could share USX's confidential information with attorneys for the competitor trucking company as long as they were investigating a personal-injury claim against USX.

{¶39} Not surprisingly, provisions like the one here have been met with skepticism. For example, the United States District Court for Kansas recently

rejected a sharing protective order that gave the plaintiffs' counsel "sole discretion to decide which attorneys met the criteria for disclosure" and did "not require any advance notice be given to [d]efendants of those being provided confidential information, or any opportunity for [d]efendants to object in advance of disclosure." *McKellips v. Kumho Tire Co., Inc.,* D.Kan. No. 13-cv-2393-JTM-TJJ, 2014 U.S. Dist. LEXIS 97086, *5 (July 17, 2014). Rather than allowing such "preemptive sharing provision," the court concluded that sharing should be determined on "an as-needed or case-by-case basis during the course of the litigation." *Id.* at *6. Similarly, in *Wal-Mart Stores E., L.P. v. Endicott*, 81 So.3d 486, 490 (Fla.App.2011), the court explained that prior to entering a sharing protective order, a court should balance the needs of the collateral litigants with the need to protect confidential documents. In refusing to allow sharing, the court explained that such a balancing could not take place where the court did not know the identity of the litigants with whom the receiving party might share discovery. *Id. See Steede v. Gen. Motors LLC*, W.D.Tenn. No. 2:11-cv-02351-STA-dkv, 2012 U.S. Dist. LEXIS 81103, *16 (Apr. 11, 2012) (rejecting sharing protective order where determination as to whether other litigant possessed a "substantially similar claim" so as to allow sharing would be left solely to the discretion of plaintiffs' attorneys); *Bertetto,* 2008 U.S. Dist. LEXIS 119233, at *8 (refusing to enter sharing protective order "[b]ecause the provision would result in the dissemination of Defendants' confidential information being removed from meaningful court oversight and left completely in the hands of Plaintiffs' attorneys, and as such would be available to any plaintiff who simply filed suit against Defendants, regardless of the suit's merits or the relevance of the materials to the suit").

{¶40} The plaintiffs here argue that the work-product doctrine precludes USX from learning which documents are shared. *See Miller v. Gen. Motors Corp.*, 192 F.R.D. 230, 231 (E.D.Tenn.2000). But we do not think that the work-product issues are sufficient to outweigh the legitimate concerns about the protection of confidential information. First, we find it unlikely that in the ordinary course simply identifying the names of collateral litigants or attorneys receiving information would violate the work-product doctrine. And if such a situation does arise, we believe that it is better handled on a case-by-case basis with specific application to the court rather than through a blanket grant of authority to plaintiffs' counsel. We note that in a number of other cases where sharing with collateral litigants has been allowed, courts have required disclosure of the identity of the collateral litigants at the time of sharing. *See, e.g.*, *Raymond Handling Concepts Corp. v. Superior Court*, 39 Cal.App.4th 584, 587 (Cal.App.1995).

{¶41} Another problem is that there is no provision for the return of confidential documents at the end of the case. Instead, the court ostensibly retains jurisdiction to act if someone violates the terms of the order. This not only increases the risk of USX's trade secrets falling into the wrong hands, but it also calls for the court's involvement in perpetuity. *See Williams v. Taser Internatl., Inc.*, N.D.Ga. No. 1:06-CV-51-RWS, 2006 U.S. Dist. LEXIS 47255, *10 (June 30, 2006).

## E. All this adds up to an abuse of discretion

{¶42} A trial court enjoys broad discretion when regulating discovery, and its decisions will not be overturned absent an abuse of that discretion. *Mauzy,* 75 Ohio St.3d at 592, 664 N.E.2d 1272. A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision is one that is not

supported by a "sound reasoning process." *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶43} Here, although the trial court held a hearing, there is no indication that it attempted to balance USX's interests in protecting its confidential materials with the interests the plaintiffs and collateral litigants may have in sharing. Rather, the trial court simply adopted the plaintiffs proposed order in toto. It did not make any modifications to what plaintiffs had proposed or consider the possibility of any additional protections for plaintiffs.

{¶44} The end result is an order that (1) allows sharing without any requirement that the litigation be similar or even that there be litigation at all, (2) gives plaintiffs' counsel almost unfettered discretion to choose with whom they will share documents without any real court supervision, (3) fails to provide USX with any prior notice or opportunity to object before the sharing of its confidential documents, and (4) allows USX's confidential information to be maintained by other parties in perpetuity. It is at least as broad as any sharing order that this court has found discussed in the case law.

{¶45} We do not lightly conclude that a trial court abused its discretion in the management of discovery. But we think the combination of characteristics of this particular sharing order together with the lack of any real balancing of interests by the trial court all add up to an abuse of discretion. As a consequence, we sustain the assignment of error and vacate the protective order.

## IV. And in conclusion

{¶46} The assignment of error is sustained, the protective order is vacated, and the case is remanded to the trial court. We hesitate to tread too far into the weeds of discovery, a matter best left to the discretion of the trial court, but having

vacated the protective order, it is only fair that we provide some guidance as to what to do next. On remand, the court should engage in an inquiry consistent with this opinion to determine what sharing provisions—if any—are appropriate in a protective order in this case. If the court concludes that a sharing protective order is necessary, we believe that, at a minimum, such an order should allow USX advance notice and an opportunity to object to sharing with any particular collateral litigant. Further, such an order should be limited to those in litigation that is similar or related to the current litigation.

{¶47} Finally, we note that nothing in this opinion impedes the ability of plaintiffs to share nonconfidential information. Absent a limiting order, parties to discovery are free to share such information with whomever they wish. The protective order that we have vacated made provision for the plaintiffs to object to any designation by USX of information as confidential, and upon proper objection, placed the burden on USX to demonstrate its entitlement to confidential treatment. We expect that any subsequent protective order entered by the trial court will contain similar provisions.

Judgment vacated and cause remanded.

**CUNNINGHAM, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.